**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**OWENSBORO DIVISION**
**CIVIL ACTION NO. 4:13CV-00137-HBB**


MARK A. REDDICK                                                                    PLAINTIFF


VS.


CAROLYN W. COLVIN, Acting
Commissioner of Social Security                                              DEFENDANT


<u>**MEMORANDUM OPINION**</u>
<u>**AND ORDER**</u>

<u>BACKGROUND</u>

Before the Court is the complaint (DN 1) of Mark A. Reddick ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). Both the Plaintiff (DN 16) and Defendant (DN 17) have filed a Fact and Law Summary.

Pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (DN 14). By Order entered March 10, 2014 (DN 13), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted. No such request was filed.

<u>FINDINGS OF FACT</u>

On February 328, 2011, Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income payments (Tr. 12, 166, 173). Plaintiff alleged that he became disabled on January 12, 2011, as a result of high blood pressure, diabetes, neuropathy in legs/feet, bad back (Tr. 12, 201). Administrative Law Judge Edward F. Sweeney ("ALJ") conducted a video hearing from Paducah, Kentucky on August 1, 2012 (Tr. 12, 29-31). Plaintiff appeared in Madisonville, Kentucky and was represented by attorney Ronald Bruce (Tr. 12, 29-31). Also present and testifying was Kenneth Boaz, an impartial vocational expert (Tr. 12, 29-31).

In a decision dated September 13, 2012, the ALJ evaluated this adult disability claim pursuant to the five-step sequential evaluation process promulgated by the Commissioner (Tr. 12-23). The ALJ concluded that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2015 (Tr. 14). At the first step, the ALJ found Plaintiff has not engaged in substantial gainful activity since January 12, 2011, the alleged onset date (Tr. 14). At the second step, the ALJ determined that Plaintiff's diabetes mellitus, diabetic neuropathy, hypertension, and obesity are "severe" impairments within the meaning of the regulations (Tr. 14). Notably, at the second step, the ALJ also determined that Plaintiff's medically determinable mental impairment of depression is a "non-severe" impairment within the meaning of the regulations because it does not cause more than minimal limitation in his ability to perform basic mental work activities (Tr. 14). At the third step, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 (Tr. 16).

At the fourth step, the ALJ found Plaintiff has the residual functional capacity to perform less than a full range of sedentary work because he can only occasionally stoop, kneel, crouch, crawl, and climb ramps and stairs; he should never climb ladders, ropes, or scaffolds; he can only occasionally operate foot controls with his bilateral lower extremities; and he should avoid concentrated exposure to vibration, temperature extremes and wetness (Tr. 16). Relying on testimony from the vocational expert, the ALJ found that Plaintiff is unable to perform any of his past relevant work as an electrician's helper, van/truck driver, truck driver, material handler, and bartender helper (Tr. 22).

The ALJ proceeded to the fifth step where he considered Plaintiff's residual functional capacity, age, education, and past work experience as well as testimony from the vocational expert (Tr. 22-23). The ALJ found that Plaintiff is capable of performing a significant number of jobs that exist in the national economy (Tr. 22-23). Therefore, the ALJ concluded that Plaintiff has not been under a "disability," as defined in the Social Security Act, from January 12, 2011, through the date of the decision, September 13, 2012 (Tr. 23).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 8). The Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-5).

<u>CONCLUSIONS OF LAW</u>

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities. 42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income). The term "disability" is defined as an

[i]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months.

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a), 416.905(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim.  See "Evaluation of disability in general," 20 C.F.R. §§ 404.1520, 416.920.  In summary, the evaluation proceeds as follows:

1)     Is the claimant engaged in substantial gainful activity?

2)     Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her  ability to do basic work activities?

3)     Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

4)     Does the claimant have the residual functional capacity to return to his or her past relevant work?

5)     Does the claimant's residual functional capacity, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, the ALJ denied Plaintiff's claim at the fifth step.

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-4).  At that point, the ALJ's decision became the final decision of the

Commissioner. 20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); <u>see</u> 42 U.S.C. § 405(h) (finality of the Commissioner's decision).

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. Section 405(g); <u>Cotton v. Sullivan</u>, 2 F.3d 692, 695 (6th Cir. 1993); <u>Wyatt v. Secretary of Health and Human Services</u>, 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied. <u>Landsaw v. Secretary of Health and Human Services</u>, 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." <u>Cotton</u>, 2 F.3d at 695 (quoting <u>Casey v. Secretary of Health and Human Serverices</u>, 987 F.2d 1230, 1233 (6th Cir. 1993)). In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." <u>Cohen v. Secretary of Health and Human Services</u>, 964 F.2d 524, 528 (6th Cir. 1992) (quoting <u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1984)).

Plaintiff disagrees with Finding No. 4 which addresses the third step in the five step sequential evaluation process (DN 16, Memorandum at Page 1). In Finding No. 4, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in Appendix 1 (Tr. 16).

At the third step, a claimant has the burden of demonstrating he has an impairment that meets or medically equals a listing in Appendix 1. <u>See</u>, 20 C.F.R. §§ 404.1520(d), 416.920(d); <u>Burgess v. Secretary of Health and Human Serv's.</u>, 835 F.2d 139, 140 (6th Cir. 1987). To meet a listing in Appendix 1, the medical records regarding the impairment must satisfy both the

diagnosis and severity requirements for the listing. Social Security Ruling 96-5p; 20 C.F.R. §§ 404.1525(d), 416.925(d); Hale v. Secretary of Health and Human Serv's., 816 F.2d 1078, 1083 (6th Cir. 1984). If the impairment does not meet the severity requirements of a listing, then the Administrative Law Judge looks to the opinions of the state agency medical advisors and/or the opinion of a testifying medical expert for guidance on the issue of whether the medical findings are at least equal in severity and duration to the listing findings. 20 C.F.R. §§ 404.1526(a) and (b), 416.926(a) and (b); Social Security Ruling 96-5p; Deters v. Secretary of Health, Educ. and Welfare, 789 F.2d 1181, 1186 (5th Cir. 1986). A finding that a claimant meets or equals a listing is dispositive of the case and, therefore, reserved to the Administrative Law Judge. Social Security Ruling 96-5p.

It is well-established that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." United States v. Layne, 192 F.3d 556, 566 (6th Cir.1999) (quoting McPherson v. Kelsey, 125 F.3d 989, 995-96 (6th Cir.1997)); see also Brindley v. McCullen, 61 F.3d 507, 509 (6th Cir.1995) (observing that "[w]e consider issues not fully developed and argued to be waived."). Here, Plaintiff disagrees with Finding No. 4. However, Plaintiff has not identified a specific listing in Appendix 1 and explained why he believes the medical evidence shows he meets or medically equals that listing (DN 16, Memorandum at Pages 2-9). Therefore, Plaintiff's first claim is deemed waived.

Next, Plaintiff disagrees with Finding No. 5 which sets forth the ALJ's residual functional capacity assessment (DN 16, Memorandum at Page 1). In Finding No. 5, the ALJ determined that Plaintiff has the residual functional capacity to perform less than a full range of sedentary work because he can only occasionally stoop, kneel, crouch, crawl, and climb ramps and stairs; he

6

should never climb ladders, ropes, or scaffolds; he can only occasionally operate foot controls with his bilateral lower extremities; and he should avoid concentrated exposure to vibration, temperature extremes and wetness (Tr. 16).

The residual functional capacity finding is the Administrative Law Judge's ultimate determination of what a claimant can still do despite his or her physical and mental limitations. 20 C.F.R. §§ 404.1545(a), 404.1546, 416.945(a), 416.946. The residual functional capacity finding is based on a consideration of medical source statements and all other evidence in the case record about what a claimant can do despite limitations caused by his or her physical and mental impairments. 20 C.F.R. §§ 404.1529, 404.1545(a), 404.1546, 416.929, 416.945(a), 416.946; Social Security Ruling 96-5p; Social Security Ruling 96-7p. Thus, in making the residual functional capacity finding the Administrative Law Judge must necessarily assign weight to the medical source statements in the record and consider the subjective allegations of the claimant and make credibility findings. 20 C.F.R. §§ 404.1527(c), 404.1529; Social Security Ruling 96-7p.

Here, Plaintiff challenges the ALJ's findings regarding the weight accorded to medical source statements in the record and the credibility of Plaintiff's subjective allegations (DN 16, Memorandum at Pages 2-9). The undersigned will first address Plaintiff's arguments regarding the weight accorded to the medical source statements in the record.

The regulations require Administrative Law Judges to evaluate every medical opinion in the record. 20 C.F.R. §§ 404.1527(c); 416,927(c).[1] The process of assigning weight to medical opinions in the record begins with a determination whether to assign controlling weight to the

---

[1] Effective March 26, 2012, the numbering of the treating physician rules changed. Section 416.927(d)(2) became 416.927(c)(2), and section 404.1527(d)(2) became 404.1527(c)(2).

medical opinion of the treating source. 20 C.F.R. §§ 404.1527(c); 416,927(c). If controlling weight is not assigned to the treating source's opinion, the Administrative Law Judge must consider the factors in paragraphs (c)(1)-(6) of §§ 404.1527(c) and 416.927(c) in deciding how much weight to accord each of the medical opinions in the record, including the medical opinion from the treating source.

The source of the medical opinion dictates the process by which the Commissioner accords it weight. Gayheart v. Commissioner, 710 F.3d 365, 376 (6th Cir. 2013). The regulations indicate that treating source opinions must receive "controlling weight" when two conditions are met: (1) the medical opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the medical opinion "is not inconsistent with other substantial evidence in ... [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); Gayheart, 710 F.3d at 376. Notably, the Administrative Law Judge must provide "good reasons" for not giving controlling weight to the opinions of the treating source. Gayheart, 710 F.3d at 377 (quoting Wilson v. Commissioner, 378 F.3d 541, 544 (6th Cir. 2004)).

If the Administrative Law Judge does not give the treating physician's medical opinion controlling weight, "then the opinion is weighed based on the length, frequency, nature, and extent of the treating relationship, ... as well as the treating source's area of specialty and the degree to which the opinion is consistent with the record as a whole and is supported by relevant evidence." Gayheart, 710 F.3d at 376 (citing 20 C.F.R. § 404. 1527(c)(2)-(6)). Further, the Administrative Law Judge must provide "good reasons" for the weight given to the treating physician's opinion. 20 C.F.R. § 404.1527(c)(2); Social Security Ruling 96-2p; Gayheart, 710 F.3d at 376; Wilson, 378 F.3d at 545-546. Notably, "[t]hese reasons must be 'supported by the evidence in the case record,

and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" Gayheart, 710 F.3d at 376 (citing Social Security Ruling 96-2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996)).  "This procedural requirement 'ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.'"  Gayheart, 710 F.3d at 376 (quoting Wilson, 378 F.3d 544).

Notably, medical opinions from examining and non-examining physicians are "never assessed for 'controlling weight.'" Gayheart, 710 F.3d at 376 (citation omitted).  Instead, the Administrative Law Judge "weighs these opinions based on the examining relationship (or lack thereof), specialization, consistency, and supportability..."  Id. (citing 20 C.F.R. § 404.1527(c)(2)).  Further, other factors that tend to support or contradict the medical opinion may be considered in assessing the medical opinion.  Gayheart, 710 F.3d at 376 (citing 20 C.F.R. § 404.1527(c)(2)).

Plaintiff argues the ALJ erred in discounting the opinions of Dr. Popescu, a treating specialist in internal medicine (DN 16, Memorandum at Pages 4-10).  Citing a letter, dated August 5, 2011, and a Medical Source Statement of Ability To Do Work-Related Activities (Physical), also dated August 5, 2011, Plaintiff argues the opinions of Dr. Popescu are not vague and conclusory as the ALJ indicated in the decision (DN 16, Memorandum at Page 7; Tr. 343, 346-348).  Plaintiff asserts that Dr. Popescu very clearly indicated he suffers from diabetes mellitus with diabetic neuropathy and skin/foot ulcers and poor circulation (DN 16, Memorandum at Page 5).  Additionally, Plaintiff asserts that Dr. Popescu clearly opined the amount of pain Plaintiff suffered and the medications he takes on a regular basis are the reasons for Plaintiff's

restrictions and inability to work (DN 16, Memorandum at Pages 5, 7; Tr. 343, 346-348). Additionally, Plaintiff observes that the second page of the Medical Source Statement is not included in the administrative record (DN 16, Memorandum at Page 5). Plaintiff points out that on the second page Dr. Papescu opined he is limited to sitting less than 6 hours in an 8 hour work day (DN 16, Memorandum at Page 7 and Exhibit at Page 2). Plaintiff suggests this is why the ALJ incorrectly found Dr. Popescu did not place any limitations on his ability to sit (DN 16, Memorandum at Pages 5, 7; compare DN 16, Exhibit at Page 2 with Tr. 346-348).

Defendant argues the ALJ assigned little weight to the April 11, and August 5, 2011 letters from Dr. Popescu because they were conclusory statements that did not provide specific limits on Plaintiff's ability to work and were not supported by detailed objective criteria and documentation (DN 17, Memorandum at Page 8). Additionally, Defendant asserts that Dr. Popescu's opinion in those letters about Plaintiff's ability to work is an issue reserved of the ALJ because such a finding is case dispositive (DN 17, Memorandum at Page 8). Focusing on the Medical Source Statement dated August 5, 2011, Defendant contends substantial evidence in the record supports the ALJ's reasons for discounting the functional limitations expressed by Dr. Popescu (DN 17, Memorandum at Pages 8-9). Finally, Defendant asserts because the ALJ found the objective evidence did not support Dr. Popescu's limitations there was no prejudice resulting from the absence of Page 2 of the Medical Source Statement in the record (DN 17, Memorandum at Page 8, fn. 3).

The parties seem to be in agreement that Dr. Popescu is a treating physician within the meaning of the regulations. In letters dated April 11 and August 5, 2011, Dr. Popescu expressed opinions regarding Plaintiff's ability to work (Tr. 300, 343). Additionally, on August 5, 2011, Dr.

Popescu responded to a questionnaire about limitations imposed by Plaintiff's physical limitations (Tr. 346-348; DN 16, Exhibit). The questionnaire is entitled "MEDICAL SOURCE STATEMENT OF ABILITY TO DO WORK-RELATED ACTIVITIES (PHYSICAL)" ("MSS") (Tr. 346).

In the letter dated April 11, 2011, Dr. Popescu expressed the following information and opinions regarding Plaintiff:

> Mr. Reddick has been my patient for sometime. He suffers from uncontrolled diabetes mellitus, diabetic neuropathy, diabetic skin ulcers as well as chronic pain.
>
> He is currently using Insulin as well as other medications in order to control his glucose values/pain. Given these conditions he is unable to engage in any work related activity.

(Tr. 300).

In the letter dated August 5, 2011, Dr. Popescu provided the following information and opinions about Plaintiff:

> Mr. Rddick has been my patient for several years. He suffers from longstanding, uncontrolled diabetes, high blood pressure, high cholesterol, as well as depression. He is in quite a bit of pain given the degree of diabetic neuropathy/chronic leg pain and suffers from other complications of this disease {poor circulation and foot ulcers}.
>
> Given the extent and severity of his conditions, he is unable to engage in gainful activities. His pain/level of discomfort prevent him from walking too far, sustaining any kind of effort for any period of time.
>
> He is on a large amount of medications including diabetic medications, antihypertensives, as well as pain relievers.

(Tr. 343).

Dr. Popescu filed out all four pages of the MSS (DN 16, Exhibit). Unfortunately, only the first, third, and fourth pages of the completed MSS are in the administrative record (Tr. 346-348). This means the second page is not part of the administrative record the ALJ considered when he rendered his decision (Compare Tr. 346-348 with DN 16, Exhibit).

On the first page of the completed MSS, Dr. Popescu indicated Plaintiff is limited to occasionally lifting and/or carrying less than 10 pounds; frequently lifting and/or carrying less than 10 pounds; and standing and/or walking less than 2 hours in an 8-hour workday (Tr. 346). On the third page, Dr. Popescu reported that Plaintiff is capable of frequently fingering and feeling but limited to occasionally reaching in all directions and handling (Tr. 347). Additionally, Dr. Popescu indicated no limitations on Plaintiff's visual/communicative abilities (Tr. 347). On the fourth page, Dr. Popescu indicated Plaintiff's exposure to environmental limitations (e.g., temperature extremes, noise, dust, vibration, humidity/wetness, hazards, and fumes) was limited (Tr. 348). Additionally, Dr. Popescu provided the following explanation for the above limitations:

> Mr. Reddick suffers from dm/diabetic neuropathy and other complications of this disease (skin/feet ulcers, poor circulation).
>
> The amount of pain and the meds he takes on a regular basis are the reason for the above restrictions and his inability to work.

(Tr. 348).

On the second page of the completed MSS, Dr. Popescu limited Plaintiff to sitting less than 6 hours in an 8-hour day (DN 16, Exhibit). However, this page is not in the administrative record considered by the ALJ.

12

The ALJ provided a thorough summary of the medical records received from Dr. Popescu (Tr. 18-19). Additionally, the ALJ summarized the first, third, and fourth pages of the completed MSS (Tr. 19). Obviously, the ALJ could not summarize the second page because it is not in the administrative record. The ALJ then commented as follows:

> The undersigned notes Dr. Popescu did not limit the claimant's ability for sitting. The evidence, including the claimant's testimony, reflects that he can stand/walk for brief periods consistent with sedentary work activity. Additionally, there is no evidence of upper extremity limitations that would preclude lifting up to ten pounds. Even the most recent treat [sic] records dated July 12, 2012, noted that physical activity was limited due to neuropathy in his feet with no upper extremity limits referenced (Exhibit 15F).

(Tr. 19). At a subsequent point in the decision, the ALJ provided the following explanation for the weight accorded to Dr. Popescu's opinions:

> The undersigned is unable to assign Dr. Popescu's opinions any significant weight, as his opinion is vague, generally conclusory, and on an issue reserved to the Commissioner. The extent of the claimant's ability to perform work-related activity is not clear form Dr. Popesu's assessments. However, the undersigned does note Dr. Popesu did not limit the claimant's ability for sitting. The evidence, including the claimant's testimony, reflects that he can stand/walk for brief periods consistent with sedentary work activity. Additionally, there is no evidence of upper extremity limitations that would preclude lifting up to ten pounds (Exhibits 3F, 9F, 10F and 14F).

(Tr. 21).

The first two sentences in the above quoted paragraph address Dr. Popescu's letters dated April 11 and August 5, 2011 (Tr. 21, 300, 343). In those letters, Dr. Popescu merely opines Plaintiff "is unable to engage" in "any work related activity" and "gainful activities" (Tr. 300,343). Unquestionably, these are vocational opinions and they are dispositive of the issue of disability, an

issue reserved for the Commissioner. Social Security Ruling 96-5p, 1996 WL 374183, *2-5 (July 2, 1996); Landsaw v. Secretary of Health and Human Servs., 803 F.2d 211, 213 (6th Cir. 1986). While such opinions must not be disregarded, they are not entitled to controlling weight or to be given special significance. Id. Furthermore, neither letter clearly indicates the extent of Plaintiff's ability to perform work-related activities such as lifting/carrying, standing and/or walking, and sitting (Tr. 300, 343). Additionally, the ALJ is not bound by such conclusory opinions from a treating source, especially where, as here, there is an absence of supporting objective medical evidence. Landsaw, 803 F.2d at 213. In sum, the findings in the first and second sentences are supported by substantial evidence in the record and comport with applicable law with regard to vocational opinions that are dispositive of the issue of disability.

The third through fifth sentences in the above paragraph address limitations in the MSS (Tr. 21, 346-348). Although the ALJ's explanations are brief, he did find the restrictions in the MSS are not consistent with Plaintiff's testimony and the treatment records (Tr. 21). Thus, the ALJ expressed two good reasons for not according "controlling weight" to the medical opinions in the MSS. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); Gayheart, 710 F.3d at 376. Additionally, these are two "good reasons" for assigning limited weight to the medical opinions in the MSS. 20 C.F.R. § 404.1527(c)(2); Social Security Ruling 96-2p; Gayheart, 710 F.3d at 376; Wilson, 378 F.3d at 545-546. In sum, the ALJ's findings regarding the weight accorded to each of Dr. Popescu's opinions are supported by substantial evidence in the record and comport with applicable law.

As previously mentioned, the second page of the MSS was not in the record considered by the ALJ. Therefore, the Court cannot consider this page in determining whether the findings in

the final decision of the Commissioner are supported by substantial evidence in the administrative record. 42 U.S.C. Section 405(g); Cline v. Commissioner of Social Security, 96 F.3d 146, 148 (6th Cir. 1996); Cotton v. Sullivan, 2 F.3d 692, 695-696 (6th Cir. 1993); Wyatt v. Secretary of Health and Human Services, 974 F.2d 680, 683 (6th Cir. 1992). However, the undersigned can consider this missing page for the limited purpose of determining whether a prejudgment remand is appropriate.

Pursuant to Sentence six of 42 U.S.C. Section 405(g), the Court is authorized to order a prejudgment remand for consideration of new and material evidence that for good cause was not previously presented to the Commissioner. Cline, 96 F.3d at 148; Faucher v. Secretary of Health and Human Services, 17 F.3d 171, 174-175 (6th Cir. 1994). When the Court issues a prejudgment remand order, it does not address the correctness of the administrative decision. Melkonyan v. Sullivan, 501 U.S. 89, 98 (1991). "Rather, the court remands because new evidence has come to light that was not available to the claimant at the time of the administrative proceeding and the new evidence might have changed the outcome of the prior proceeding." Id.

Evidence is considered "new" if it did not exist at the time of the administrative proceeding. Ferguson v. Commissioner of Social Security, 628 F.3d 269, 276 (6th Cir. 2010); Sizemore v. Secretary of Health and Human Serv's., 865 F.2d 709, 711 (6th Cir. 1988) (per curiam). Here, the second page of the MSS existed at the time of the administrative proceeding. Thus, it would not be considered "new."

Evidence is considered "material" if there is a reasonable probability that a different disposition would have resulted if the evidence had been submitted during the original proceeding. Ferguson, 628 F.3d at 276; Sizemore, 865 F.2d at 711. Here, the ALJ found the limitations that

15

Dr. Popescu expressed on the first, third, and fourth pages of the MSS were not consistent with Plaintiff's testimony and the treatment records (Tr. 21). Arguably, if the second page of the MSS had been in the record, the ALJ would have relied on these two reasons to discount Dr. Popescu's sitting restrictions. Additionally, the non-examining state agency medical consultant, Dr. Gedmark, opined that Plaintiff is able to sit about 6 hours in an 8-hour workday[2] (Tr. 117). This sitting restriction is consistent with the evidence in the record and the ability to perform sedentary work. Social Security Ruling 83-10, 1983 WL 31251, *5 (1983) ("sitting should generally total approximately 6 hours of an 8-hour workday"); Social Security Ruling 96-9p, 1996 WL 374185, *3 (1996) ("[s]itting would generally total about 6 hours of an 8-hour workday"). Thus, if the second page of the MSS had been in the administrative record, the ALJ could have used Dr. Gedmark's slightly less restrictive sitting restriction, in connection with other evidence in the record, to discount Dr. Popescu's sitting restriction and to support a finding that Plaintiff has the residual functional capacity to perform less than a full range of sedentary work (Tr. 16). For these reasons, the undersigned concludes the sitting restriction on the second page of the MSS is not "material."

Finally, "good cause" is demonstrated by showing a reasonable justification for the failure to acquire and present the evidence to the Administrative Law Judge. Foster v. Halter, 279 F.3d 348, 357 (6th Cir. 2001). Here, there is no way of determining why the second page is not in the

---

[2] Dr. Gedmark opined that Plaintiff can occasionally lift and/or carry 50 pounds; frequently lift and/or carry 25 pounds; stand and/or walk (with normal breaks) about 6 hours in an 8-hour workday; and sit (with normal breaks) for a total of about 6 hours in an 8-hour workday (Tr. 116-117). These exertional limitations are consistent with medium work activity (Tr. 116-117). However, the ability to sit for a total of about 6 hours in an 8-hour workday is also consistent with sedentary work activity. Social Security Ruling 83-10, 1983 WL 31251, *5 (1983); Social Security Ruling 96-9p, 1996 WL 374185, *3 (1996).

administrative record. It could have been the product of an oversight by Plaintiff's counsel or a mistake by a clerk with the State agency (Tr. 345-348). Regardless, Plaintiff's counsel had the opportunity to review the administrative record prior to the hearing but failed to notice the second page of the MSS was missing (Tr. 32). Given the circumstances, the undersigned concludes the "good cause" requirement is not satisfied. Therefore, the undersigned concludes a prejudgment remand, pursuant to sentence six of 42 U.S.C. § 405(g), is not appropriate.

Finally, Defendant asserts because the evidence did not support Dr. Popescu's sitting restriction there was no prejudice resulting from the absence of this page in the record (DN 17, Fact and Law Summary at Page 8, fn. 3). The undersigned agrees.

Next, Plaintiff challenges the ALJ's assignment of weight to the opinions of Dr. Storey, the consultative examiner (Tr. 16, Fact and Law Summary at Pages 7-8). Defendant asserts that Dr. Storey's opinion, about Plaintiff having a moderate to severe level of limitation in job-related activities, is inconsistent with the doctor's own examination findings (DN 17, Fact and Law Summary at Page 7).

The ALJ's summary of Dr. Storey's report reads as follows:

> In April 2011, Benjamin Storey, M.D., performed a consultative medical evaluation. Dr. Storey noted that according to the claimant, he has impairment of function secondary to diabetes and diabetes related diseases. He alleged his impairment was primarily derived from a neurologic standpoint, and has developed over a period of most of his lifetime. Musculoskeletal exam showed no limitation in all extremities. He had healing ulcer scars along his bilateral lower and upper extremities, but there was no evidence of ulcers at the time of the examination. Neurological exam revealed 4+ strength in all extremities, and 4+ grip strength. The claimant had decreased sensation to pinprick in his bilateral feet and hands. Dr. Storey opined that according to the claimant's reported history, physical exam findings and ancillary data, he has a

> moderate-to-severe level of limitation in job-related activities (Exhibit 4F).

(Tr. 18). At a later point in the decision, the ALJ gave the following explanation for the weight he accorded to Dr. Storey's opinion:

> Little weight is given the opinion of consultative examiner, Dr. Storey, that the claimant has a moderate-to-severe level of limitation in job-related activities. The claimant [sic] musculoskeletal exam showed no limitation in all extremities. He had ulcer scars along his bilateral lower and upper extremities, but there was no evidence of ulcers at the time of the exam. Neurological exam revealed some decreased sensation to pinprick in his bilateral feet and hands, but he had 4+ strength in all extremities, and 4+ grip strength. The claimant's upper extremity findings were generally benign with only limits with dexterity, but not overly impacting his functioning (Exhibit 4F).

(Tr. 21). The undersigned concludes that substantial evidence in the record supports the ALJ's findings regarding the weight accorded to Dr. Storey's restrictions. Additionally, the ALJ weighed Dr. Storey's opinion based on the examining relationship, specialization, consistency, and supportability. Gayheart, 710 F.3d at 376; 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Further, the ALJ appropriately considered other factors that tend to support or contradict Dr. Storey's medical opinion. Gayheart, 710 F.3d at 376; 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Therefore, the ALJ's findings comport with applicable law.

Next, Plaintiff argues the ALJ erred when he relied on the opinion of J. Athy, Ph.D., a non-examining State agency psychologist, to find his depression was not a severe impairment (DN 16, Fact and Law Summary at Page 7). Plaintiff believes the findings of the consultative examiner, Shirley Spence, Ph.D., show his depression is severe and, as a result, contradict the ALJ's finding (DN 16, Fact and Law Summary at Page 7). Defendant contends there is no merit to Plaintiff's argument because Dr. Spence did not indicate any specific functional limitations

related to Plaintiff's depression (DN 17, Fact and Law Summary at Pages 10-11).    For this reason, Defendant asserts the ALJ appropriately found the opinions of Dr. Spence did not contradict the opinions of Dr. Athy (DN 17, Fact and Law Summary at Page 11).

In Finding No. 3, the ALJ determined Plaintiff's depression was a non-severe impairment because it did not cause more than minimal limitation in his ability to perform basic work activities (Tr. 14).    In making this determination, the ALJ relied on Dr. Athy's opinions regarding the degree of functional limitation in the four broad functional areas known as the "paragraph B" criteria (Tr. 15-16, 21).    In connection with Finding No. 5, the ALJ summarized the medical opinions addressing Plaintiff's depression (Tr. 16, 20-22).    Additionally, the ALJ made findings regarding the weight he assigned to those medical opinions (Tr. 16, 20-22).

In pertinent part, the ALJ's summary of the report from Dr. Spence reads as follows:

> In September 2011, Shirley Spence, Ph.D., performed a consultative psychological evaluation and diagnosed polysubstance abuse in remission and major depressive disorder.    Dr. Spence opined the claimant's diabetes is chronic and until it is controlled, the depression will be ongoing.    Dr. Spence further reported that during the interview, the claimant was able to understand and remember instructions.    His social interaction was limited because of fear of getting involved in the drug culture, but no indication of major issues in the social realm.    Dr. Spence noted the claimant responded to a normal workday setting, but complained of physical issues that would have to be determined by a medical specialist. The claimant walked with a cane due to neuropathy in his feet and legs, and he had sores on both legs.    He described himself as a drug addict and an alcoholic, and reported he used drugs on his birthday in June 2011, and again on July 4, 2011 (Exhibit 11F).    The undersigned notes the exacerbation in July 2011, with "blackout" followed what the claimant now admits was an episode of heavy drug use, including meth.

(Tr. 20).    The undersigned has reviewed Dr. Spence's report and concludes the ALJ provided an accurate summary (Tr. 20, 378-380).

19

Dr. Athy reviewed the medical record, including Dr. Spence's report, and rendered an opinion regarding the degree of functional limitation in the four broad functional areas known as the "paragraph B" criteria (Tr. 97-103). Dr. Athy opined that Plaintiff had mild restriction of activities of daily living; mild difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence or pace; and Plaintiff has experienced no episodes of decompensation, of extended duration (Tr. 102). Further, Dr. Athy opined the evidence did not establish the presence of the "C" criteria (Tr. 102).

In relevant part, the ALJ's decision reads as follows:

> State agency program psychologist, Jay Athy, Ph.D., reviewed the objective medical evidence and opined the claimant does have an affective disorder. When rated under the "B" criteria, the state agency psychologist opined the claimant's impairment causes only "mild" limitations affecting his daily activities, social functioning and ability to maintain concentration, persistence or pace. There is no evidence the claimant has ever had an episode of decompensation, of extended duration, or that the "C" criteria is met (Exhibit 8A/6).

> The Administrative Law Judge is fully persuaded by the program psychologist's opinion, which is uncontradicted by any treating or examining source, including the opinion of consulting physician, Dr. Spence, that the claimant's physical complaints are his primary problem (Exhibit 11F). Accordingly, the undersigned finds the claimant's medically determinable affective disorder is "non-severe".

(Tr. 21). The undersigned has reviewed the record and concludes substantial evidence in the record supports the ALJ's findings regarding Dr. Athy's opinion. Further, the ALJ's findings comport with applicable law.

Plaintiff also takes issue with the ALJ's findings regarding the credibility of his subjective complaints about pain and other symptoms. Notably, Plaintiff's statement that he is experiencing

pain or other symptoms will not, taken alone, establish that he is disabled; there must be medical signs and laboratory findings which show the existence of a medical impairment that could reasonably be expected to give rise to the pain and/or other symptoms alleged. 20 C.F.R. §§ 404.1529(a), 416.929(a). In determining whether a claimant suffers from debilitating pain and/or other symptoms, the two-part test set forth in Duncan v. Secretary of Health and Human Serv's., 801 F.2d 847, 853 (6th Cir. 1986), applies. Here, the ALJ appropriately considered whether there is objective medical evidence of an underlying medical condition. Then the ALJ determined the objectively established medical conditions are not of such severity that they can reasonably be expected to produce the alleged disabling pain and other symptoms (Tr. 20-21). Id. Because the reported pain and other symptoms suggested impairments of greater severity than can be shown by objective medical evidence, the ALJ appropriately considered other information and factors which may be relevant to the degree of pain and other symptoms alleged. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

The ALJ found from the medical record and Plaintiff's testimony that Plaintiff does not suffer pain to the extent he testified. In the absence of detailed corroborating evidence of Plaintiff's subjective complaints, it becomes the duty of the ALJ to resolve the issue of Plaintiff's credibility. Because tolerance of pain and other symptoms is a highly individualized matter, and a determination of disability based on pain depends, of necessity, largely on the credibility of the claimant, the conclusion of the ALJ, who has the opportunity to observe the claimant's demeanor, "should not be discharged lightly." Houston v. Secretary of Health and Human Serv's., 736 F.2d 365, 367 (6th Cir. 1984) (citing Beavers v. Secretary of Health, Educ. and Welfare, 577 F.2d 383 (6th Cir. 1978)). The undersigned concludes that the ALJ's findings regarding Plaintiff's

credibility are supported by substantial evidence and fully comport with applicable law, including the regulations for evaluating consultative and treating physician's opinions and pain. See 20 C.F.R. §§ 404.1519a-p, 404.1527, 404.1529, 416.919a-p, 416.927, 4416.929.

Additionally, there is no merit to Plaintiff's assertion that the ALJ impermissibly issued a medical opinion (DN 16, Fact and Law Summary at Pages 7, 8). The ALJ reviewed the medical evidence in the record and assigned weight to the medical opinions. In light of the weight assigned to the medical opinions, it was appropriate for the ALJ to make the following finding in the context of addressing Plaintiff's subjective statements about severely limited daily activities:

> Secondly, even if the claimant's daily activities are truly as limited as alleged, it is difficult to attribute the degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the **relatively weak medical evidence** and other factors discussed in this decision.

(Tr. 17) (emphasis added). Inasmuch as the ALJ relied on medical opinions in the record to make this finding there is no basis for Plaintiff's claim that the ALJ rendered a medical opinion. Cf. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (the Administrative Law Judge interpreted raw medical data in functioning terms and no medical opinion supported that determination); Clifford v. Apfel, 227 F.3d 863, 870 (7th Cir. 2000) (the Administrative Law Judge substituted his own judgment for a physician's opinion without relying on other medical evidence or authority in the record); Rohan v. Chater, 98 F.3d 966, 968 (7th Cir. 1996) (the Administrative Law Judge succumbed to the temptation to play doctor and make his own independent medical findings); Lennon v. Apfel, 191 F.Supp.2d 968, 977 (W.D. Tenn. 2001) (the Administrative Law Judge gave into the temptation to play doctor when he made functional findings based on his own interpretation of the treating physician's findings).

Next, Plaintiff disagrees with Finding No. 9 (DN 16, Fact and Law Summary at Pages 1-2).

Finding No. 9 reads as follows:

> Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

(Tr. 22) (emphasis in original text). Notably, Plaintiff has not explained why he disagrees with Finding No. 9 (DN 16, Fact and Law Summary Pages 1-10). It is well-established that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." United States v. Layne, 192 F.3d 556, 566 (6th Cir.1999) (quoting McPherson v. Kelsey, 125 F.3d 989, 995-96 (6th Cir.1997)); see also Brindley v. McCullen, 61 F.3d 507, 509 (6th Cir.1995) (observing that "[w]e consider issues not fully developed and argued to be waived."). Inasmuch as Plaintiff has adverted to the issue in a perfunctory manner, with no supporting argument, the claim is deemed waived.

Next, Plaintiff disagrees with Finding No. 10 (DN 16, Fact and Law Summary at Pages 2, 8-9). Finding No. 10 reads as follows:

> Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

(Tr. 22). Plaintiff disagrees with this finding because the vocational expert opined there is no work Plaintiff can perform based on the limitations in the fourth and fifth hypothetical questions (DN 16, Fact and Law Summary at Pages 8-9; citing Tr. 67-69). Plaintiff indicates these two hypothetical questions are based on limitations expressed by his treating specialist, Dr. Popescu (DN 16, Fact and Law Summary at Pages 8-9). Defendant argues the ALJ discounted the

limitations set forth in the fourth and fifth hypotheticals and, therefore, the ALJ appropriately rejected the vocational expert's response to those questions (DN 17, Fact and Law Summary at Pages 11-12). The undersigned agrees with Defendant.

At the fifth step, the Commissioner has the burden of demonstrating there exist a significant number of jobs in the local, regional and national economies that the claimant can perform, given his or her residual functional capacity, age, education, and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v) and (g), 416.920(a)(4)(v) and (g); Allen v. Califano, 613 F.2d 139, 145 (6th Cir. 1980); Wyatt v. Secretary of Health and Human Services, 974 F.2d 680, 684 (6th Cir. 1992); Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990). When a claimant's age, education, previous work experience and residual functional capacity coincide with all of the criteria of a particular Grid Rule in Appendix 2 of the regulations, referred to as the medical-vocational guidelines, the Commissioner may rely on that Grid Rule to meet this burden. 20 C.F.R. §§ 404.1569, 416.969; Grid Rule 200.00; Born v. Secretary of Health and Human Services, 923 F.2d 1168, 1174 (6th Cir. 1990);Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990). However, if a claimant's age, education, previous work experience and residual functional capacity do not coincide with all the criteria of a particular Grid Rule, the Commissioner is limited to using the Grid Rule as a framework in the decision making process and must make a non-guideline determination based on the testimony of a vocational expert. 20 C.F.R. §§ 404.1566(e), 416.966(e); Born, 923 F.2d at 1174; Varley v. Secretary of Health and Human Services, 820 F.2d 777, 779 (6th Cir. 1987); Kirk v. Secretary of Health and Human Services, 667 F.2d 524, 531, 535 (6th Cir. 1981), cert. denied, 461 U.S. 957 (1983). For example, if the claimant suffers from an exertional and a non-exertional impairment then the

Grids may be used only as a framework to provide guidance for decision making. 20 C.F.R. §§ 404.1569a(d) and 416.969a(d);20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(e); Abbot v. Sullivan, 905 F.2d 918, 926-927 (6th Cir. 1990); Cole v. Secretary of Health and Human Services, 820 F.2d 768, 771 (6th Cir. 1987); Kirk v. Secretary of Health and Human Services, 667 F.2d 524, 528-529 (6th Cir. 1981).

Here, at the fourth step the ALJ found Plaintiff's impairments impose exertional and non-exertional limitations (Tr. 16). Therefore, at the fifth step, the ALJ followed the applicable law when he used the Grids only as a framework in the decision making process and made a non-guideline determination based on the testimony of a vocational expert (Tr. 22-23). Further, the vocational expert's testimony constitutes substantial evidence to support the ALJ's finding that Plaintiff is capable of performing a significant number of jobs existing in the Kentucky and national economies (Tr. 22-23), Bradford v. Secretary, Dep't. of Health and Human Serv's., 803 F.2d 871, 874 (6th Cir. 1986) (per curiam), because the vocational expert's testimony is based on the second hypothetical question which accurately portrayed the limitations imposed by Plaintiff's impairments (Tr. 16, 64-67). Varley v. Secretary of Health and Human Serv's., 820 F.2d 777, 779 (6th Cir. 1987). In sum, Finding No. 10 is supported by substantial evidence in the record and comports with applicable law. Further, contrary to Plaintiff's contention, the vocational expert's responses to the fourth and fifth hypothetical questions do not constitute substantial evidence to support the ALJ's finding at the fifth step because those hypothetical questions portray physical and mental limitations the ALJ discounted at the fourth step.

Finally, Plaintiff disagrees with Finding No. 11 (DN 16, Fact and Law Summary at Page 2). There is no merit to Plaintiff's position because substantial evidence supports the ALJ's

findings at all five steps in the sequential evaluation process.   In sum, substantial evidence in the record supports Finding No. 11.

ORDER

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is AFFIRMED.

This is a final and appealable Order and there is no just cause for delay.

Copies:          Counsel